ZINGER CONSTRUCTION
COMPANY, INC.

v.

The UNITED STATES.

No. 94–86C.

United States Claims Court.

Nov. 30, 1987.

James V. Joy, Bridgeport, Conn., for plaintiff.

Thomas W. Petersen, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

OPINION

YOCK, Judge.

This contract case is currently before the Court on the defendant's motion for summary judgment. For the reasons discussed herein, the defendant's motion for summary judgment is granted, and the plaintiff's complaint is to be dismissed.

*Factual Background*

This is the sixth time that the plaintiff's value engineering (VE) claim arising out of Contract No. DACA51–73–C–0133 has been before a court or board for appropriate disposition. On July 11, 1984, the plaintiff appealed the decision of the Armed Services Board of Contract Appeals (Board), ASBCA No. 28585, 84–1 BCA ¶ 17,209 (the third Board decision), which had dismissed

Zinger's appeal on the grounds of *res judicata*, to the Court of Appeals for the Federal Circuit.

In its decision of January 30, 1985, the Federal Circuit spelled out the factual background of this case in clear and concise language, as follows:

In June 1973 Zinger contracted to construct an incinerator plant at Watervliet Arsenal in Watervliet, New York, for $818,488. Subsequent modifications increased the total contract price to $963,252. In August 1973 Zinger submitted a value engineering (VE) proposal which it estimated would produce a $50,000 savings. The United States amended the contract to take advantage of the proposal.

In September 1974 the United States terminated the contract for its convenience. Zinger submitted a settlement proposal and the parties began a series of negotiating sessions. During the sessions, Zinger raised the issue of payment for its VE proposal. Zinger contended that under the contract it was entitled to 50 percent of the savings realized by the United States as a result of its VE proposal. Initially, the United States responded that such payment was inappropriate. When Zinger raised the issue of the VE claim at the final negotiating session, the United States informed Zinger that the proposed settlement accounted for the VE claim. The United States specifically advised Zinger that the contract modification formalizing the settlement would provide that no outstanding liabilities under the contract remained. The parties informally agreed to a total settlement of $578,057, of which the United States had previously paid $331,861.30. Relying on the informal agreement, the United States paid Zinger $246,095.70, withholding $100 pending the execution of a contract modification formalizing the agreement.

On July 15, 1977, Zinger sent a letter to the contracting officer stating that the issue of payment for the VE proposal was unresolved. Without responding to the letter, the contracting officer sent the contract modification to Zinger in August 1977. Zinger signed the contract modification on September 12, 1977, but later refused the final payment of $100 tendered by the United States.

On October 11, 1977, Zinger filed a notice of appeal with the board, alleging that the contracting officer had failed to render a decision on the VE claim. The board determined that the contract modification was an accord and satisfaction which barred Zinger's claim. Accordingly, the board denied Zinger's appeal. ASBCA No. 22499, 78-2 BCA ¶ 13,461, *aff'd*, 225 Ct.Cl. 596 (1980).

On January 28, 1982, Zinger filed a complaint with the board alleging that the United States had breached the construction contract. The board denied Zinger's claim, reasoning that Zinger was barred by res judicata from asserting a different theory of recovery in an effort to relitigate the same claim. ASBCA No. 26733, 83-1 BCA ¶ 16,438.

On August 5, 1983, Zinger filed yet another complaint with the board in which it alleged that newly discovered evidence proved that the final settlement did not incorporate the VE claim. On February 24, 1984, the board dismissed the complaint, holding that the evidence in question (1) was previously available to Zinger and (2) did not dictate, in any event, a result contrary to the earlier decision of the board. 84-1 BCA at 85,679. We now address Zinger's appeal of this third decision of the board.

*Zinger Construction Co. v. United States*, 753 F.2d 1053-54 (1985).

The Federal Circuit went on to decide that it did not have jurisdiction over the plaintiff's appeal from the Board's decision. It found that the plaintiff could not elect to proceed under the Contract Disputes Act of 1978 because its claim was not pending before a contracting officer on or after the effective date of the Act, which was March 1, 1979. In order for the Federal Circuit to assume jurisdiction over a decision by a board, that board had to render a decision pursuant to the Contract Disputes Act. *Zinger Construction Co. v. United States*, *supra*, 753 F.2d at 1054. The contract

itself was signed in 1973. Unsaid by the Federal Circuit but implicit in the decision was the direction that the plaintiff must follow the old Wunderlich Act appeal route, if it intended to appeal. The United States Claims Court could hear the appeal pursuant to the standards of review called for by the Wunderlich Act, 41 U.S.C. §§ 321, 322 (1982).

Although the Federal Circuit had no jurisdiction over the plaintiff's appeal from the Board, it did have an opinion on the merits of the plaintiff's claim. In concluding its discussion it stated:

> With respect to Zinger's VE claim against the United States, there have been five published opinions: three by the ASBCA, one by the United States Court of Claims, and the present one. It is evidence after all of the attention given to Zinger's claim that there is no merit to it. Pursuant to discretion vested in this court by 28 U.S.C. § 1631 (1982), we should transfer the case to the United States Claims Court if we find that to do so would be in the "interest of justice." On this record, we cannot so find. *Cf. Brown v. United States,* 741 F.2d 1374, 1377–78 (Fed.Cir.1984).
>
> DISMISSED.

*Zinger Construction Co. v. United States, supra,* 753 F.2d at 1055.

Not having been discouraged by this broadside, the plaintiff filed its Wunderlich Act appeal in this Court on February 14, 1986.

### Discussion

In its complaint, the plaintiff cites the Tucker Act, 28 U.S.C. § 1491 (1982), the Wunderlich Act, 41 U.S.C. §§ 321, 322 (1982), and United States Claims Court Rule 60(b)(3) as sustaining this Court's jurisdiction over this matter. Plaintiff seeks judgment in the amount of $25,000 plus interest, costs and fees, as its estimate of the amount due it for its VE proposal.

Using Rule 60(b)(3) as its vehicle, the plaintiff seeks an order from this Court vacating the three prior decisions issued by the Armed Services Board of Contract Appeals (Board) and the opinion issued by this

Court's predecessor, the United States Court of Claims. The plaintiff claims that such relief is appropriate due to the Government's misconduct in the withholding of a document. This document, plaintiff argues, constitutes newly discovered evidence supporting its position that the parties' informal settlement agreement did not include an amount for plaintiff's VE proposal.

Although the plaintiff's Rule 60(b)(3) argument has the ring of refreshing originality to it, unfortunately it does not fit the circumstances of this case.

Rule 60(b) provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * * (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party * * *.

This rule also states that "[t]he motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken." USCC Rule 60(b).

■ The plaintiff's motion, made pursuant to Rule 60(b) fails for two reasons. First, Rule 60(b) can only be invoked when the judgment from which a party seeks relief was a judgment of the court (or board) in which relief is sought. Here in the Claims Court, Zinger seeks relief from three decisions issued by the Armed Services Board of Contract Appeals and one decision rendered by this Court's predecessor, the Court of Claims. This Court simply does not have the power to vacate decisions issued by other tribunals. *Taft v. Donellan Jerome, Inc.,* 407 F.2d 807, 809 (7th Cir.1969); *Goodwin v. Home Buying Investment Co.,* 352 F.Supp. 413, 416 (D.D.C. 1973). Thus, Rule 60(b) was never intended to be used for the purposes for which the plaintiff has invoked it.

■ Second, even if this Court could vacate the decisions of the Board and Court of Claims, plaintiff would not prevail on its

argument. Rule 60(b) states that any claim for relief "shall be made * * * not more than one year after the judgment, order, or proceeding was entered or taken." The Board issued its decisions in 1980, 1983 and 1984; the Court of Claims issued its decision in 1980. Although the plaintiff cites a myriad of Board cases which state that the one-year limitation period will not be rigidly applied, such decisions are not binding precedent in this Court. The one-year limitation period *is* applicable in the Claims Court. USCC Rule 60(b). *See Myers v. United States*, 8 Cl.Ct. 718, 721 (1985), *aff'd*, 795 F.2d 1016 (Fed.Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1322, 94 L.Ed.2d 174 (1987). Zinger's motion to vacate filed February 14, 1986, therefore, is too late.

■ Although the plaintiff framed its prayer for relief in its complaint only in terms of a motion to vacate prior decisions pursuant to Rule 60(b), Zinger, in actuality, seeks a Wunderlich Act review, 41 U.S.C. §§ 321, 322 (1982), of the third decision issued by the Board. The plaintiff clearly cited to the Wunderlich Act, and although the complaint was inartfully drawn, that is the only logical conclusion. In that third ASBCA decision, the plaintiff alleged the same facts as it alleges here and seeks the same monetary relief.

The Board, in *Zinger Construction Co., Inc.*, ASBCA No. 22499, 78–2 BCA ¶ 13,461, *aff'd*, 225 Ct.Cl. 596 (1980) (the first Board case), found that the parties had mutually agreed in an informal settlement agreement that the plaintiff's VE claim would be included in that overall settlement agreement figure, and that a contract modification had been signed by both parties to that effect. Thus, there had been an accord and satisfaction of the plaintiff's VE claim. The plaintiff then appealed this decision to the Court of Claims, which affirmed the decision of the Board. *Zinger Construction Co. v. United States*, 225 Ct.Cl. 596 (1980). Following the Court of Claims' decision, the plaintiff again filed an action with the Board. That action alleged that the Government had breached the contract involved in the first

Board decision by failing to issue a modification in a timely fashion, especially in regard to the plaintiff's VE claim. The Board had no trouble determining that the matter was *res judicata*. It stated:

It is clear from a review of appellant's complaint and its oral argument that the events appellant characterizes as a breach occurred prior to the termination settlement and merely represent a different way of arguing entitlement to its VE claim. Couching its complaint as one for a breach of contract does not change the nature or merits of appellant's VE claim, or the fact that appellant has already litigated the claim. An attempt to relitigate the same claim in this action is barred by *res judicata*.

*Zinger Construction Co., Inc.*, ASBCA No. 26733, 83–1 BCA ¶ 16,438 (the second Board case). Following this decision, the plaintiff filed a third action with the Board in regard to its VE claim. In this action, it in effect asked the Board to vacate its earlier judgments because of newly discovered evidence. It argued that a newly discovered negotiating document entitled "Memorandum of Negotiations (TCO memo date 16 June 1977)" clearly shows that the plaintiff's VE claim was not included in the informal settlement agreement, and thus it was entitled to judgment on its VE claim. The Board denied this appeal also, stating:

While appellant had ample opportunity to obtain the so-called "Memorandum of Negotiation," there is no indication that it attempted to do so. The Government had no obligation to search its files for this document without a discovery request from appellant. *C & L Construction Co., Inc.*, ASBCA Nos. 22993, 23040, 83–2 BCA ¶ 16,785; see also *American Electronic Laboratories, Inc. v. United States* [27 CCF ¶ 80,330], 222 Ct.Cl. 653 [650 F.2d 285] (1980) affirming *American Electronic Laboratories, Inc.*, ASBCA Nos. 17779, 18278, 78–1 BCA ¶ 12,907 Moreover, we are not persuaded that this so-called "newly discovered" evidence would dictate a different result from our earlier decision. There is nothing contained therein which conflicts

with the evidence that has heretofore been considered.

*Zinger Construction Co., Inc.,* ASBCA No. 28585, 84–1 BCA ¶ 17,209 (the third Board decision). It is from this third Board decision that the plaintiff seeks its Wunderlich Act review. As already indicated, the plaintiff in the instant case is alleging the same facts (*i.e.,* newly discovered evidence in the form of the same negotiation document) as it alleged in the third Board decision.

Under the standards of the Wunderlich Act, the factual findings of the Board are considered final and conclusive unless shown to be arbitrary, capricious, so grossly erroneous as to imply bad faith, or not supported by substantial evidence. *Northwestern Industrial Piping, Inc. v. United States,* 199 Ct.Cl. 540, 545, 467 F.2d 1308, 1310 (1972). Absent such a deficiency, the Court is bound by the Board's factual findings even though the administrative record might support different or contrary findings as well. *Wickham Contracting Co. v. United States,* 212 Ct.Cl. 318, 322–23, 546 F.2d 395, 397 (1976). Plaintiff has to meet a heavy burden in order to establish that, on the record before the Board, the Board's findings are not supported by substantial evidence. *Koppers Co. v. United States,* 186 Ct.Cl. 142, 147–51, 405 F.2d 554, 556–59 (1968).

Questions of law resolved by the administrative tribunal are neither final nor binding on the Court. *Aluminum Company of America v. United States,* 2 Cl.Ct. 771, 776 (1983); *Chemithon Corp. v. United States,* 1 Cl.Ct. 747, 750 (1983); *B.D. Click Co. v. United States,* 222 Ct.Cl. 290, 297–98, 614 F.2d 748, 752–53 (1980); *Arundel Corp. v. United States,* 207 Ct.Cl. 84, 97, 515 F.2d 1116, 1123 (1975). Legal interpretations by such boards, however, are considered helpful even if not compelling, and such interpretations will be given great weight, especially if reasonable and based on the particular board's expertise. *Dale Ingram, Inc. v. United States,* 201 Ct.Cl. 56, 71, 475 F.2d 1177, 1185 (1973).

Here the plaintiff has failed to meet its heavy burden. Having carefully reviewed the Board decisions (with emphasis on the third Board decision), as well as the three volumes of documents submitted by the plaintiff in support of its position and which comprise the salient parts of the administrative record before the Board, this Court finds that the Board's factual determinations were not fraudulent, arbitrary or capricious but were supported by substantial evidence. The Board was on solid factual grounds when it determined that the supposedly newly discovered negotiating memorandum did not conflict with its prior finding based on direct witness testimony that the plaintiff's VE claim was included in the informal settlement agreement. Further, the Board committed no errors as a matter of law.

This Court's conclusions as to the merits of the plaintiff's claim, then, are the same as the Federal Circuit's. There is no merit to the plaintiff's VE claim, and the complaint will be dismissed. Furthermore, should the plaintiff somehow find its way back into this Court arguing for the same VE claim that it has now pursued through six tribunals, this Court will consider that claim (appeal) frivolous and will impose appropriate sanctions. Six bites out of the judicial apple are enough.

## CONCLUSION

For the reasons discussed above, the defendant's motion for summary judgment is granted, and the plaintiff's complaint is to be dismissed.

Costs to the prevailing party.